FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 07, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID R.,[1]

                    Plaintiff,

          v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    4:21-cv-5143-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff David R. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to meaningfully explain why the reaching limitations in the RFC were not as restrictive as those opined by the medical sources and failed to ask the vocational expert whether an individual who has occasional-reaching abilities with his left arm can perform the identified assembler occupations, the ALJ erred. This matter is remanded for further proceedings.

----

[1] For privacy reasons, the Court refers to each social-security plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.  Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9] If an impairment or combination of impairments

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[4] *Id.* §§ 404.1520(b), 416.920(b).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[7] *Id.* §§ 404.1520(c), 416.920(c).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. §§ 404.1520(d), 416.920(d).

[11] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

Plaintiff filed Title 2 and 16 applications alleging disability beginning August 31, 2018.[17] His claims were denied initially and on reconsideration.[18] Upon request, ALJ Lori Freund held an administrative hearing by telephone and took testimony from Plaintiff about his conditions and symptoms.[19]

After the hearing, the ALJ denied Plaintiff's disability applications and found:

- Plaintiff met the insured status requirements through December 31, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity since August 31, 2018, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative joint disease of the left shoulder, obesity, plantar fasciitis with spurring, and ADHD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work:

---

[17] AR 330–53.

[18] AR 234–38, 244–51.

[19] AR 150–81.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

except he can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk up to six hours in an eight-hour workday with normal breaks; sit at least six hours in an eight-hour workday with normal breaks; occasional push/pull with the left non-dominant upper extremity; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; reaching overhead and in all other directions more than 18 inches away from the body is limited to occasional with the left non-dominant upper extremity; avoid concentrated exposure to excessive vibration and extreme temperatures; avoid all exposure to unprotected heights and hazardous machinery; limited to simple and repetitive tasks; occasional interaction with coworkers and the general public; occasional changes in a work setting.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as production assembler, small products I assembler, and small products II assembler.[20]

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record.[21]

---

[20] AR 128–49.

[21] AR 139.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to the Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[24] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[26] The Court considers the entire record.[27]

---

[22] AR 1–7.

[23] 42 U.S.C. § 405(g).

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[29]

## IV.    Analysis[30]

## A.    Reaching Abilities with the Left Upper Extremity

Plaintiff argues the ALJ failed to explain why she found the medical-source opinions regarding Plaintiff's left-upper-extremity reaching limitations unpersuasive. In response, the Commissioner first argues that Plaintiff did not sufficiently support this argument and therefore waived the argument and, second, that substantial evidence supports the ALJ's evaluation of the medical opinions.

As to the Commissioner's first argument, the Court finds Plaintiff sufficiently raised the issue of whether the ALJ failed to explain why the RFC only restricts reaching overhead or "more than 18 inches away from the body" with the left upper extremity to occasional, while medical sources restricted *all* reaching with the left upper extremity to occasional.[31]

---

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (cleaned up).

[30] Because further proceedings are required due to error during the five-step evaluation, the Court does not address Plaintiff's constitutional separation-of-powers argument.

[31] ECF No. 15 at 13–15.

The second issue is whether the ALJ meaningfully explained why she discounted the medical-source opinions as to Plaintiff's reaching abilities with his left upper extremity and whether that finding was supported by substantial evidence. The ALJ has a duty to evaluate the persuasiveness of each medical opinion, including evaluating whether the medical opinion was supported by or consistent with the evidence.[32]

Here, three medical sources—Dr. Jerry Seligman, Dr. James Opara, and Dr. Howard Platter—each offered an opinion as to Plaintiff's abilities with his left upper extremity.[33] Each doctor opined that Plaintiff's reaching overhead and in all directions/forward with his left upper extremity was restricted. Each doctor also restricted Plaintiff to lifting and carrying 20 pounds occasionally and 10 pounds frequently. As to handling, Dr. Platter restricted Plaintiff's handling with his left upper extremity to occasional, Dr. Opara imposed no handling limitation, and Dr. Seligman's testimony was unclear as to whether he offered a handling or manipulative opinion.

Pertinent to these opinions, "occasionally" is defined as "from very little up to one-third of the time," i.e., "no more than about 2 hours of an 8-hour workday;" whereas, "frequently" is defined as "from one-third to two-thirds of the time."[34]

---

[32] 20 C.F.R. § 404.1520c(a), (b), (c)(1)–(5); 20 C.F.R. § 416.920c(a), (b), (c)(1)–(5).

[33] AR 155–59, 707–11, 207–11.

[34] Social Security Ruling (SSR) 83–10.

Reaching is "extending hand(s) and arm(s) in any direction," and "handling" is "seizing, holding, grasping, turning, or otherwise working with hand or hands[;] fingers are involved only to the extent they are an extension of the hand, such as to turn a switch or shift automobile gears."[35] In comparison to the non-exertional tasks of reaching and handling, carrying and lifting are exertional tasks.[36]

The ALJ addressed each of the medical opinions pertaining to Plaintiff's left upper extremity and found:

- Dr. Seligman's reviewing testimony that Plaintiff could only occasionally push/pull and reach in all directions with the left upper extremity partially was persuasive because Plaintiff testified at the hearing that he had no problem reaching in front of his body for items such as a coffee cup and he had no problem taking his shoes off and on during a consultative examination.

---

[35] Selected Characteristics of Occupations (SCO) App. C. Physical Demands (1993); *see also* SSR 85-15: Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments.

[36] SSA Program Operations Manual System (POMS) Disability Insurance (DI) 25001.001.

- Dr. Opara's examining opinion—that Plaintiff's ability to reach overhead and forward with his left upper extremity was limited—was partially persuasive because it was very vague.

- Dr. Platter's reviewing opinion that Plaintiff was limited to occasional reaching with his left upper extremity was persuasive as to overhead reaching but unpersuasive otherwise because Plaintiff "admitted at the hearing he has no problems reaching directly in front of him."[37]

Although the ALJ incorporated the lifting/carrying and push/pull restrictions and the occasional-overhead-reaching limitation into the RFC, the ALJ did not fully restrict reaching in all other directions (hereinafter, "forward reaching") to occasionally for the left upper extremity. Instead, the RFC restricts reaching "in all other directions *more than 18 inches away from the body*" to occasionally for the left upper extremity.[38] The ALJ offered reasons as to why she discounted the opinions regarding Plaintiff's forward reaching and handling; however, the ALJ did not articulate why she modified the forward-reaching limitation to 18 inches.

---

[37] AR 139–40. Only the medical opinions as to Plaintiff's reaching abilities are listed, as those are the only opinions Plaintiff contends were erroneously considered by the ALJ.

[38] AR 136 (emphasis added).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Turning to each of the articulated reasons for discounting these three medical opinions as to Plaintiff's ability to forward-reach with his left upper extremity, first, the ALJ discounted Dr. Seligman's forward-reaching opinion because Plaintiff had no difficulty removing and putting on his shoes during his consultative examination with Dr. Opara. An ALJ may discount an opinion that is inadequately supported by medical findings and observations.[39] Here, the ALJ failed to mention that even though Plaintiff had no difficulty taking on/off his shoes during the examination, Dr. Opara nonetheless restricted Plaintiff's reaching with his left upper extremity based on Plaintiff's left upper extremity tenderness and limited motion. Plaintiff's left shoulder motion was forward elevation 90 degrees, abduction 100 degrees, adduction 50 degrees, external rotation 45 degrees, internal rotation 40 degrees, and backward extension 30 degrees.[40] And Dr. Opara noted that Plaintiff's left-upper-extremity strength was 3/5.[41] Given Dr. Opara's observed

---

[39] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole).

[40] AR 709.

[41] AR 710.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

left-shoulder deficiencies and his opined limitation for the left upper extremity, that Plaintiff had no problem taking his shoes off and on during the examination does not serve as substantial evidence to discount Dr. Seligman's forward-reaching opinion.

Second, the ALJ discounted Dr. Opara's opinion that Plaintiff's ability to reach overhead and forward with his left upper extremity was "limited" because the opinion was "very vague."[42] An ALJ may discount an opinion due to vagueness if the opinion is not supported by examination findings.[43] Here, Dr. Opara's reaching opinion was supported by his examination findings, including the observed tenderness and decreased range of motion discussed above. Therefore, before discounting the opinion for being vague, the ALJ had a duty to develop the record to clarify any consequential ambiguities contained in or caused by the opinion.[44] Following Dr. Opara's examination of Plaintiff, Dr. Platter and Dr. Seligman reviewed Dr. Opara's examination report and they both concluded

---

[42] AR 140.

[43] *See Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995).

[44] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

that Plaintiff should be limited to occasional forward-reaching with his left upper extremity. The ALJ fails to adequately explain why Dr. Platter's and Dr. Seligman's subsequent opinions were insufficient to clarify the purported ambiguity caused by Dr. Opara's opinion that Plaintiff's ability to forward-reach with his left upper extremity was "limited." Moreover, the ALJ had the opportunity to question Dr. Seligman as to why he translated Dr. Opara's "limited" opinion to an occasional-reaching limitation, but the ALJ did not ask Dr. Seligman this question. The ALJ erred by not clarifying this purported vagueness before discounting Dr. Opara's opinion as vague.[45]

Finally, when discounting the forward-reaching opinions, the ALJ relied on Plaintiff's testimony that he had no problem reaching in front of himself to hold a cup of coffee. Whether a medical opinion is consistent with the longitudinal record—including Plaintiff's reported symptoms—is a factor for the ALJ to consider.[46] And an ALJ may consider whether the medical opinion is consistent

---

[45] "The ALJ always has a special duty to fully and fairly develop the record" in order to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up). This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence. *Id.* at 1184.

[46] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

with the claimant's level of activity.[47] Pertinent to his left shoulder, Plaintiff
testified that:

- He can raise his left arm overhead, but he cannot pick up something and
  lift it over his head.

- He can reach out and grab something as light as a coffee mug but is
  unable to carry anything heavier than that with his left hand.

- He would experience pain in his left shoulder if he lifted a gallon of milk
  in his left hand.

- If he picks up something too heavy (about 30 pounds), his left "arm pulls
  out of [its] socket and [he has] to put it back in."

- He can wash dishes and dress himself.[48]

Plaintiff's testimony reflects that while he can reach in front of his body with
his left upper extremity, any use of his left hand that involves weight as heavy as a
gallon of milk causes pain in his left shoulder. This testimony is consistent with
Dr. Platter's opinion restricting Plaintiff to occasional reaching and handling with
his left upper extremity. Yet, the ALJ did not include any handling restrictions in
the RFC and modified not only Dr. Platter's, but also Dr. Seligman's and
Dr. Opara's, forward-reaching limitation. Without an explanation as to why the

---

[47] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d
597, 603 (9th Cir. 1989).

[48] AR 174–78.

1    ALJ added an 18-inch qualifier to the forward-reaching limitation opined by three

2    medical experts, Plaintiff's reported ability to reach out to grab a coffee mug is not

3    substantial evidence supporting the ALJ's decision to discount the medical opinions

4    that Plaintiff was more limited, i.e., he should only occasionally forward reach with

5    his left upper extremity as part of his job duties.

6    In summary, the ALJ failed to meaningfully articulate why she modified the

7    occasional forward-reaching limitation by both Dr. Seligman and Dr. Platter and

8    the "limited" forward-reaching limitation by Dr. Opara, to include an 18-inch

9    forward-reaching parameter. On remand, if the ALJ maintains an 18-inch

10   parameter as to Plaintiff's forward-reaching with his left upper extremity, the ALJ

11   must explain the basis for doing so.

12   **B.    Step 5: Vocational expert's testimony and the *Dictionary***

13   Plaintiff argues the ALJ's errors as to his left upper extremity were harmful

14   because the three identified occupations—production assembler, small products I

15   assembler, and small products II assembler—require frequent and/or constant

16   reaching rather than occasional. In response, the Commissioner asserts that

17   Plaintiff's harmful-error argument is premised on an erroneous assumption that

18   these jobs require the use of both arms. The Commissioner argues that because

19   Plaintiff can reach with his *right* upper extremity there is nothing in the

20   Dictionary of Occupational Titles ("*Dictionary*") or Selected Characteristics of

21   Occupations (SCO) that creates an apparent or obvious conflict between the

22

23

1    vocational expert's testimony that Plaintiff could work as one of the identified

2    assemblers despite his reaching limitations with his left upper extremity.

3        At step five, the ALJ considers the claimant's background and RFC, along

4    with the testimony of the vocational expert, to decide whether the claimant can

5    perform available jobs notwithstanding his functional limitations.[49] If the

6    vocational expert's "opinion that the applicant is able to work conflicts with, or

7    seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ

8    must ask the expert to reconcile the conflict before relying on the expert to decide if

9    the claimant is disabled":[50]

10        For a difference between an expert's testimony and
          the *Dictionary's* listings to be fairly characterized as a conflict, it must
11        be obvious or apparent. This means that the testimony must be at
          odds with the *Dictionary's* listing of job requirements that are
12        essential, integral, or expected. This is not to say that ALJs are free to
          disregard the *Dictionary's* definitions or take them with a grain of
13        salt—they aren't. But tasks that aren't essential, integral, or expected
          parts of a job are less likely to qualify as apparent conflicts that the
14        ALJ must ask about. Likewise, where the job itself is a familiar one—
          like cashiering—less scrutiny by the ALJ is required.[51]

15

16    _____

17    [49] 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *Tackett v. Apfel*,

18    180 F.3d 1094, 1100 (9th Cir. 1999); *Hill*, 698 F.3d at 1161.

19    [50] *Gutierrez v. Colvin,* 844 F.3d 804, 807 (9th Cir. 2016).

20    [51] *Id.* at 808; *see also* SSR 00-4p ("When a [vocational expert] . . . provides evidence

21    about the requirements of a job or occupation, the adjudicator has an affirmative

22    responsibility to ask about any possible conflict between that [vocational expert] . .

23    . evidence and information provided in the [*Dictionary*].").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

The ALJ—and the reviewing court—are to consider not only the *Dictionary* and SCO, but also common experience, to determine whether there is an apparent conflict.[52]

Here, based on the ALJ's identified RFC, the vocational expert identified three occupations set forth in the *Dictionary*.[53] As to the three occupations, the *Dictionary* states:

- Production assembler, 706.687-010: Performs repetitive bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Places parts in specified relationship to each other. Bolts, clips, screws, cements, or otherwise fastens parts together by hand, or using handtools or portable power tools. May tend machines, such as arbor presses or riveting machine, to perform force fitting or fastening operations on assembly line. May be assigned to different work stations as production needs require. May work on line where tasks vary as different model of same article moves along line. May be designated according to part or product produced.[54]

- Small products I assembler, 706.684-022: Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using

_____

[52] *Lamear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017); *see also* SSR 00-4p (requiring the ALJ to consider the *Dictionary* and SCO); SSR 83-14 (referencing the *Dictionary* and SCO).

[53] AR 165–68.

[54] https://occupationalinfo.org/70/706687010.html (last visited Dec. 1, 2022).

handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.[55]

- Small products II assembler, 739.687-030: Performs any combination of following duties to assemble parts of various materials, such as plastic, wood, metal, rubber, or paperboard, to produce small products, such as roller skates, toys, shoe lasts, musical instrument parts, or loudspeakers: Positions parts in specified relationship to each other, using hand, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using handtools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters.[56]

Each of the identified occupations requires more than occasional reaching. The small products II assembler requires constant reaching, handling, and fingering, and the other two occupations—production assembler and small products I assembler—require frequent reaching, handling, and fingering.[57]

Common experience and the listed description of these jobs in the *Dictionary* reveal a conflict between the vocational expert's testimony and the *Dictionary*, as amplified by the SCO's frequent/constant reaching requirement. Each identified

---

[55] https://occupationalinfo.org/70/706684022.html (last visited Dec. 1, 2022).

[56] https://occupationalinfo.org/73/739687030.html (last visited Dec. 1, 2022).

[57] SCO Part A 06.04; ECF No. 14-1 Ex. A at 284, 285.

assembler occupation requires positioning parts in specified relationship to each other and bolting, screwing, clipping, cementing, or otherwise fastening parts.[58] While these actions can be performed by hand, tweezers, or other tools, common experience dictates that the use of both arms is typically necessary to effectively and efficiently position and/or fasten parts, especially where a certain level of production is expected or required to maintain competitive employment. Because Plaintiff's reaching with his left upper extremity is limited to occasional, it is likely that Plaintiff would be unable to competitively perform these assembler occupations, as positioning and fastening parts are essential, integral, and expected functions of these occupations.

Therefore, the ALJ erred by not asking the vocational expert about this apparent conflict and to what extent a single-arm occasional-reaching restriction impacts the availability of competitive employment in these occupations.[59] The ALJ

---

[58] *Cf. Lamear*, 865 F.3d at 1205 (considering tasks described in DOT such as opening and sorting mail, stuffing envelopes, distributing paperwork, and counting change, it was likely and foreseeable that using both hands would be necessary to perform "essential, integral, or expected tasks" in an acceptable and efficient manner).

[59] *See Gutierrez*, 844 F.3d at 808 (recognizing that the requirement for an ALJ to ask the vocational expert follow-up questions as to apparent or obvious conflicts between the expert's testimony and the *Dictionary* is fact-dependent).

needed to do more than simply ask the vocational expert, at the outset of his testimony, to advise the ALJ of a conflict if the vocational expert's testimony conflicted with the *Dictionary*.[60] The ALJ needed to ask the vocational expert "to explain in some detail why" there was no conflict between the identified assembler occupations and the proposed RFC.[61]

Based on this error, the Commissioner is unable to meet its step-five burden of establishing that Plaintiff can perform these occupations considering his left-upper-extremity limitations.[62]

## V.    Conclusion

The ALJ's errors require remand for further proceedings.[63] On remand, the ALJ must reassess the medical opinions as to Plaintiff's left upper extremity and obtain vocational-expert testimony to resolve the conflicts between the *Dictionary* and the crafted RFC.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is

     **GRANTED**.

---

[60] AR 161.

[61] *Lamear*, 865 F.3d at 1205.

[62] *Tackett*, 180 F.3d at 1100–01.

[63] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

2.     The Commissioner's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3.     The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

4.     This matter is **REVERSED and REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

5.     The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 7th  day of December 2022.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge